599 So.2d 1298 (1991)
Mary N. RATLEY, as Personal Representative of the Estate of Lonnie Otis Ratley, Jr., Deceased, Appellant,
v.
Robert Levon BATCHELOR, Appellee.
No. 90-2232.
District Court of Appeal of Florida, First District.
June 11, 1991.
On Motion for Rehearing May 1, 1992.
*1299 Michael R. McCullough, Jacksonville, for appellant.
John M. Fite, Barron, Redding, Hughes, Fite, Bassett & Fensom, P.A., Panama City, for appellee.
ZEHMER, Judge.
Mary N. Ratley, the surviving wife and personal representative of the estate of Lonnie Ratley, Jr., deceased, appeals a final judgment entered in her action for the wrongful death of her husband. Mr. Ratley was killed in a head-on collision between the mini-van he was driving and a manufactured modular home being towed by the defendant, Robert Batchelor, on a two-lane state highway. The judgment, entered on a jury verdict that found Mr. Ratley 50% comparatively negligent, reduced the jury's damage award by that percentage. Mrs. Ratley's three points on appeal assert (1) error in failing to give an instruction on the prima facie effect of Mr. Batchelor's not having a valid wide-load permit to move the modular home on the highway; (2) error in failing to grant a mistrial following Mr. Batchelor's accident reconstruction expert testifying, in violation of a pretrial stipulation limiting the scope of his testimony, that his opinion on the cause of the accident was consistent with the cause stated in the Florida Highway Patrol homicide accident report; and (3) error in denying a new trial on damages because the low verdict was the result of a mistake on the jury's part or was inadequate as a matter of law. We reverse on the first two points and find it unnecessary to reach the third point because the case must be remanded for retrial on all issues.
Lonnie Ratley was killed on June 2, 1988, when the left front corner of the mini-van he was driving collided with the left front corner of the modular home being towed by Mr. Batchelor. The accident occurred on State Road 75, a two-lane, undivided roadway in Jackson County. During the collision, the side of the modular home tore through the mini-van and a two-by-four entered Mr. Ratley's midsection and exited out his back and through the seat. Despite being impaled by this two-by-four, Mr. Ratley remained conscious for some time after the accident, but ultimately died as a result of the massive internal injuries.
Mrs. Ratley, individually and as personal representative of her husband's estate, sued Mr. Batchelor for negligently causing the wrongful death of her husband. Evidence presented at trial showed that the lane widths in the vicinity of the accident were not uniform and varied between 11 to 12 feet, and that the modular home being transported by Mr. Batchelor was 13' 10" (166 inches) wide. Mr. Batchelor admitted that as he proceeded south on State Road 75 prior to the accident, the side of the modular home repeatedly jutted into oncoming traffic. Eyewitnesses testified that the side of the modular home was between 6 and 24 inches over the center line when the vehicles collided. Eyewitnesses also testified, however, that the mini-van had drifted toward the modular home seconds before the impact. These witnesses testified that the drift did not take the mini-van out of its lane of travel and that the impact occurred entirely within Mr. Ratley's lane of travel. Mr. Batchelor's expert witness opined, however, that the point of collision was in Mr. Batchelor's lane. The jury found Mr. Batchelor and Mr. Ratley equally negligent and the trial court entered a final judgment in accordance with that verdict.
As to Mrs. Ratley's first point on appeal, she requested and the trial court gave an instruction to the jury that violation of certain specific traffic regulations constituted evidence of negligence. The court instructed the jury on sections 316.081, 316.185, and 316.1925, but denied her request for the following instruction based on section 316.515:
Florida Statute section 316.515 states that the total outside width of any vehicle or the load thereon may not exceed one hundred and two inches, exclusive of safety devices determined by the department *1300 [of transportation] to be necessary for the safe and efficient operation of motor vehicles.
This instruction was requested on the theory that the modular home being towed exceeded the allowable width and that Mr. Batchelor did not at the time of the accident have a valid wide-load permit pursuant to section 316.550, Florida Statutes (1989), authorizing him to operate or move a load exceeding the width restriction in section 316.515. Prior to trial, Mrs. Ratley's counsel moved in limine to exclude any mention of the fact that Mr. Batchelor had in his possession a special permit authorizing him to transport the oversized load. This motion was grounded on the following facts stipulated to by the parties: the special permit Mr. Batchelor possessed at the time of the accident had been issued to NTC of America, Inc., the corporation that sold the modular home and hired Mr. Batchelor to deliver it to the buyer, and Mr. Batchelor was transporting the wide load as an independent contractor, not as an employee or agent of NTC of America, Inc. The court rejected Mrs. Ratley's argument that the permit was not transferable from NTC of America, Inc., to Mr. Batchelor, and allowed Mr. Batchelor to testify that he had a special permit authorizing him to transport the modular home at the time of the accident. The actual permit was never identified at trial or placed in evidence. Based on its ruling allowing the transfer of the permit, the trial court denied the requested instruction on section 316.515.
It is undisputed that the modular home being transported by Mr. Batchelor, which was 166 inches wide, exceeded the width limitation set out in section 316.515(1), Florida Statutes (1989). Section 316.550, Florida Statutes (1989), provides the following exception to this width limitation where the vehicle operator applies for and receives a special permit authorizing the transport of the oversized load:
The Department of Transportation, with respect to highways under its jurisdiction, or a local authority, with respect to highways under its jurisdiction, may, in its discretion and upon application and good cause shown therefor that the same is not contrary to the public interest, issue a special permit in writing authorizing the applicant to operate or move a vehicle or combination of vehicles of a size or weight of vehicle or load exceeding the maximum specified in this chapter, or otherwise not in conformity with the provisions of this chapter, upon any highway under the jurisdiction of the authority issuing such permit and for the maintenance of which the authority is responsible. The permit shall describe the vehicle or vehicles and load to be operated or moved and the highways for which the permit is requested.
(Emphasis added). Section 316.003(25), Florida Statutes (1989), defines the term "operator" as used in chapter 316 to mean, "Any person who is in actual physical control of a motor vehicle upon the highway, or who is exercising control over or steering a vehicle being towed by a motor vehicle." Section 316.003(29), Florida Statutes (1989), defines the term "person" as, "Any natural person, firm, copartnership, association, or corporation." Reading these provisions in pari materia, we construe section 316.550 as meaning the person who is the operator or one responsible for the actual operation of the vehicle upon the highway must be the applicant to whom the permit is issued.
Mr. Batchelor's operation of the towing vehicle for purposes of moving the modular home on State Road 75 violated section 316.515(1) unless he held a valid special permit that authorized him to transport this load. We conclude that the trial court erred in treating the NTC permit as transferable to Mr. Batchelor and finding that he had such a permit that validly covered his operation of the vehicle at the time and place of the accident. We have no doubt that had Mr. Batchelor been operating the vehicle towing the modular home as an employee or agent of NTC he would have been covered by the permit issued to NTC, because a corporation can only act through its employees and agents. However, there is no provision in chapter 316 that we know of that authorizes the transfer of such a permit from the original applicant who obtained *1301 it to an independent contractor or operator not acting for the original applicant as an employee or agent subject to its control. Since the special permit Mr. Batchelor possessed authorized NTC of America, Inc., a corporation for whom he was not employed, to move the modular home, absent an express statutory provision authorizing such transfer, NTC of America, Inc., could not validly transfer this permit to Mr. Batchelor. See Seaboard Air Line Railroad Company v. King, 89 So.2d 246 (Fla. 1956).
This interpretation of these statutes is consistent with Department of Transportation rule 14-26.007, Florida Administrative Code, which states that oversize permits are granted with the
specific understanding that the permittee shall be responsible and liable for accident, damage or injury to any person or property resulting from the operation of the equipment, covered by the permit, upon public streets and highways of the state... .
Rule 14-26.0041 defines "permittee" as the "person to whom an oversize/overweight permit is issued." In this case, NTC of America, Inc., the "permittee," insulated itself from liability by using an independent contractor, rather than one of its employees or agents subject to its control, to transport the modular home.
Under the applicable case law, the failure of an operator to have a valid wide load permit at the time of the accident is evidence of negligence. Smith v. Lumbermen's Mutual Casualty Co., 360 So.2d 1098 (Fla. 1st DCA 1978). Smith was a personal injury case resulting from a collision between an automobile and half of a double-wide portable classroom. The appellate court reversed a judgment entered for the plaintiff automobile driver pursuant to a jury verdict finding the plaintiff 90% negligent, which reduced the plaintiff's recoverable damages by that percentage. The basis for the reversal was the trial court's error in refusing to instruct the jury on section 316.196(1), Florida Statutes (1973) (now § 316.515(1)) in conjunction with Florida Standard Jury Instruction 4.11 (violation of traffic regulation constitutes evidence of negligence). This court held that because there was substantial evidence to support the plaintiff's theory that the defendant driver had violated section 316.196(1) by not having the required permit, the trial court committed reversible error in refusing to instruct the jury that if it found the defendant violated section 316.196(1), such violation constituted evidence of negligence. See also Menard v. O'Malley, 327 So.2d 905 (Fla.3d DCA 1976). Here, the undisputed facts show that Mr. Batchelor violated section 316.515(1), in that the load he was transporting was wider than 102 inches and that Mr. Batchelor did not have a special permit authorizing him to transport this oversized load on that highway. Thus, following Smith, we hold that the trial court committed reversible error in allowing Mr. Batchelor to testify that he had a special permit authorizing him to transport the modular home and in refusing to give the requested "violation of statute" jury instruction.
The second issue raised on appeal is whether the trial court erred in failing to grant Mrs. Ratley's motion for mistrial following Mr. Batchelor's accident reconstruction expert's statement that his reconstruction of the accident was consistent with that made in the homicide accident report by the Florida Highway Patrol trooper who investigated the accident. Prior to trial, Mrs. Ratley's counsel filed a motion in limine that stated in pertinent part:
3. Similarly, plaintiff requests that the Court enter an order in limine prohibiting any other witness, especially the respective party's expert witnesses, from bolstering their testimony with statements that their conclusions coincide with those of the homicide investigator. Specifically, defense counsel's accident reconstruction expert stated several times during his deposition that his opinions as to certain facts were the same as those of the homicide investigator. These remarks insinuate that the Florida Highway Patrol homicide investigator concurs with the conclusions of the respective expert. However, the Florida Highway Patrol trooper's conclusions *1302 are otherwise inadmissible and thus should not be introduced by way of the respective party's accident reconstruction expert. Therefore, plaintiff requests that the Court enter an order specifically instructing counsel for the respective parties to instruct each and every witness that they are not to respond to a question, and that counsel is not to attempt to elicit a response, that indicates that the witness's testimony is in any way supported by the conclusions of the Florida Highway Patrol traffic investigator.
(Emphasis added). (R. 521-522). Mr. Batchelor's counsel stipulated to the limitations set out in paragraph 3 of the motion in limine. Mrs. Ratley's counsel reminded Mr. Batchelor's counsel of his agreement to paragraph 3 of the motion in limine shortly after Dr. Benedict, Mr. Batchelor's accident reconstruction expert, took the stand and Mrs. Ratley's counsel was assured that Dr. Benedict would comply with the stipulation. Despite these stipulations and assurances, Dr. Benedict testified that his opinion of how the accident occurred (his opinion was that a gouge mark in Mr. Batchelor's lane of travel was the point of impact) was the same as that contained in the homicide report. We specifically note that this statement of the witness was not called for by the question asked and was clearly volunteered by the witness.
Whether a trial court should grant a mistrial is within that court's discretion, and a mistrial should not be granted unless an absolute legal necessity to do so exists. Palmer v. State, 486 So.2d 22, 23 (Fla. 1st DCA 1986). Generally, both a motion to strike the allegedly improper testimony and a request for curative instruction are necessary prerequisites to a valid motion for mistrial. Id. In such circumstances, the trial court should not grant a mistrial unless the remarks are such that instructing the jury to disregard them could not cure the error; that is, the remarks constitute fundamental error. Id. In this case, Mrs. Ratley's counsel did not move to strike Dr. Benedict's testimony and did not request that the court instruct the jury to disregard this testimony. Thus, we cannot reverse the trial court's denial of the motion for mistrial unless the remarks of Dr. Benedict constituted fundamental error.
This was a "close case" on the question of comparative negligence, as evidence was presented that Mr. Ratley drifted toward the modular home just prior to the collision. Some eye witnesses placed the point of impact in Mr. Ratley's lane. Mr. Batchelor's expert, however, placed the point of impact in Mr. Batchelor's lane. Thus, the opinion testimony that the point of impact was in Mr. Batchelor's lane of travel was of critical importance to the relative negligence of the drivers. We conclude that Dr. Benedict's violation of the stipulation regarding the motion in limine was sufficiently prejudicial to plaintiff's case to constitute fundamental error and that the trial court erred in denying Mrs. Ratley's motion for mistrial based on this ground.
We do not reach Mrs. Ratley's final point on appeal as our resolution of the first two issues renders that point moot.
The judgment is reversed for the reasons stated and this cause is remanded for a new trial on all issues.
REVERSED AND REMANDED.
WOLF, J., specially concurs with opinion.
BOOTH, J., dissents.
WOLF, Judge, specially concurring.
I agree with the majority that violation of the pretrial stipulation requires this case to be reversed for a new trial.
I also agree with the majority that in light of Smith v. Lumbermen's Mutual Casualty Company, 360 So.2d 1098 (Fla. 1st DCA 1978), the failure to give the requested jury instruction concerning violation of section 316.515(1), Florida Statutes, requires reversal. It is not apparent, however, how the technical violation of the statute in any way contributed to causing the accident. There would have been no violation of the statute if any employee of NTC of America, Inc. was driving the truck. The permit which was issued placed no limitations or special conditions on who *1303 may drive the vehicle.[1] There was no evidence that Mr. Batchelor would have failed to qualify for a permit. The mere fact that the permit was issued to the wrong party or was improperly transferred was not a factor which contributed to the accident. If it were not for this court's previous holding in Smith, I would affirm as to issue I.

ON MOTION FOR REHEARING
ZEHMER, Judge.
Robert Batchelor moves for rehearing on several grounds. Rehearing is granted as to those grounds discussed in this opinion. In all other respects rehearing is denied. We adhere to the decision in our original opinion with the following additional explanation.
One of the grounds in the motion for rehearing asserts that our opinion construes and applies this court's decision in Smith v. Lumbermen's Mutual Casualty Co., 360 So.2d 1098 (Fla. 1st DCA 1978), so as to eliminate any requirement of causation between a violation on the special wide load permit statute, § 316.550, Fla. Stat. (1989), and the collision that occurred in this case. Consequently, appellee says, our decision is in conflict with the supreme court's decision in Brackin v. Boles, 452 So.2d 540 (Fla. 1984).
Appellee's construction of our opinion as holding that "there was no causal relationship between the accident and the permit, but ... the jury should have been instructed [on Batchelor's violation of the special permit statute] anyway ..." is incorrect. We did not hold that the trial court erred in failing to instruct the jury on section 316.550. Mrs. Ratley did not request any instruction on that statute. Rather, she requested a jury instruction of section 316.515(1), and we held that the trial court's refusal to give that instruction constitutes reversible error.
Appellee's contention also misperceives the appropriate causal connection that must be established in the trial of this case to support appellant's requested jury instruction. Mrs. Ratley was obligated to prove a causal connection between the collision and the asserted violation of the width limitations in section 316.515. Mrs. Ratley was not obligated to prove a causal connection between the accident and Mr. Batchelor's failure to obtain a valid special permit in compliance with section 316.550. Section 316.550 is involved in this case only because Mr. Batchelor maintained that he was exempt from the wide load restriction in section 316.505(1) by virtue of his holding valid special permit in compliance with section 316.550.
With regard to appellee's assertion that our construction of Smith conflicts with Brackin, we note that appellee's answer brief contains no argument based either in the Brackin case or lack of causation as a basis for denying the plaintiff's requested instruction on section 316.515, Florida Statutes (1989).[1] On motion for rehearing we ordinarily do not consider new arguments not made in the main appeal. Sag Harbour Marine, Inc. v. Fickett, 484 So.2d 1250 (Fla. 1st DCA 1985), review denied, 494 So.2d 1150 (Fla. 1986); Price Wise Buying Group v. Nuzum, 343 So.2d 115 (Fla. 1st DCA 1977). Nevertheless, to provide guidance upon retrial of this case, it is appropriate to clarify the respective burdens of the parties regarding *1304 the plaintiff's proof of Mr. Batchelor's violation of the width limitation statute and the defendant's proof of compliance with the special permit exception. Smith and Brackin are not in conflict on the requirement of causation.
The law in Florida is well settled that "the violation of a traffic law or regulation is prima facie evidence of negligence that may be overcome by other facts and circumstances in the cause in fixing ultimate liability." Clark v. Sumner, 72 So.2d 375, 378 (Fla. 1954). Accord Holland v. Watson, 215 So.2d 498 (Fla. 2d DCA 1968); Marsicano v. Rogers, 164 So.2d 531 (Fla. 2d DCA 1964). "The fact that a driver violated a statute or ordinance relating to the rules of the road or use of the street does not create a cause of action for the injuries inflicted, or preclude recovery for an injury sustained, unless such violation was a proximate cause of the injury." 4 Blashfield, Automobile Law and Practice § 101.34 (3d ed. 1965). This latter principle was approved and applied by the Florida Supreme Court in Brackin v. Boles, 452 So.2d 540, in an instance where the defendant's lack of a driver's license was not shown to be causally related to the accident. Another example of the want of causation in found in McWilliams v. Argonaut Southwest Ins. Co., 174 So.2d 201 (La. App.), writ refused, 247 La. 1034, 175 So.2d 646 (1965), where it was held that the operation of a truck in violation of a permit required only because the construction of the front indicated a six foot overhang beyond the bumper was not a contributing factor or proximate cause of an accident occurring when, while the truck was stopped preparatory to making a left turn, it was struck in the rear by another vehicle. "As the accident involved only the rear end of the truck, manifestly the overhang on the front could have had no causal connection with the collision." Id. at 203.
On the other hand, in Smith v. Lumbermen's Mutual Casualty Co., 360 So.2d 1098, this court held that the trial court erred in refusing to instruct the jury on the width restrictions in section 316.515(1) [at that time § 316.196, Fla. Stat. (1973)], in conjunction with the standard jury instruction on the violation of a statute as prima facie evidence of negligence, because the plaintiff showed that the defendant operated an overwide load partially in the oncoming lane of traffic on a narrow bridge and caused a collision with an oncoming vehicle, and the defendant failed to show by competent evidence that he held an overwide special permit under section 316.550 [then § 316.009, Fla. Stat. (1973)]. The element of causation was not explicitly discussed in Smith because no issue as to lack of causation was raised on appeal. Therefore, the court's opinion should not be read as requiring the giving of the instruction of the width limitations without any showing of causation. In Benwell v. Dean, 227 Cal. App.2d 226, 38 Cal. Rptr. 542 (1964), the court held that whether the failure to secure a permit in violation of an ordinance was the proximate cause of a collision between a vehicle and a steel beam being transported in the street was a jury question. The court stated:
Whether the violation of the ordinance proximately contributed to the accident was a question of fact for the jury. We hold that the ordinance was properly admitted for the limited purpose of enabling the jury to determine whether the negligence of the deceased's employer was the sole proximate cause of the accident.
Id. at 547. In Patton v. Kirkman, 109 Utah 487, 167 P.2d 282 (1946), the court held that the violation of a statutory limitation on the width of vehicles supported a finding of negligence when the defendant operated his overwide vehicle so as to intrude into the oncoming lane of traffic.
Our original opinion discusses the interplay of section 316.515(1) (setting forth the general prohibition on the operation of vehicles and loads over 102 inches wide on state highways) and section 316.550 (authorizing the operation of vehicles or loads exceeding that general width restriction provided the operator obtains the required special permit). Once Mrs. Ratley had proved that Mr. Batchelor was operating a load exceeding 102 inches in width upon the state highway in violation of section *1305 316.515(1), Mr. Batchelor could avoid the apparent violation of this lawful restriction only by establishing that he was lawfully operating his excessively wide load upon the highway pursuant to the exception to section 316.515 found in section 316.550. Mr. Batchelor could do this by showing that he held a valid permit to operate the wide load pursuant to section 316.550 and was operating his vehicle in accordance with all lawful requirements imposed on him incident to that special permit. Since Mr. Batchelor was seeking to avoid the apparent violation of the general width restriction in section 316.515(1), he, not the plaintiff, had the burden of proving compliance with the requirements of the law to effect that avoidance. Robbins v. Webb's Cut Rate Drug Co., 16 So.2d 121, 123 (Fla. 1943) ("It is incumbent on those relying on an act for protection to bring themselves within the specifications laid down... ."); In re Estate of Livingston, 172 So.2d 619, 620 (Fla.2d DCA 1965) ("[G]enerally an exception to a statute must be proven by the one seeking to establish it."). See also Salenius v. Michigan Employment Security Commission, 33 Mich. App. 228, 189 N.W.2d 764, 769 (1971) ("It is a general rule of statutory construction that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits."); City of Chicago v. Westphalen, 95 Ill. App.2d 331, 238 N.E.2d 225, 228 (1968) ("When a party seeks to avoid the general application of a statute or ordinance and seeks to establish his case as within an exception thereto, it is incumbent upon him to prove those facts which would bring him within the defined exception. In other words, a party wishing to benefit by an exception must prove that he comes within it."); Rash v. Ross, 371 S.W.2d 109 (Tex. Civ.App. 1963); People v. One Mechanical Device Or Machine Designated As Bally Dude Ranch, 9 Ill. App.2d 38, 132 N.E.2d 338, 342 (1956), rev'd on other grounds, 11 Ill.2d 151, 142 N.E.2d 98 (1957) ("Amendatory exceptions and provisos in a statute being designed to qualify or limit what is otherwise generally affirmed in the body of an act, are to be strictly construed, and the burden is on him who says he comes within some statutory exception to establish that he does."). Under the circumstances stipulated by the parties on the motion in limine, Mr. Batchelor obviously could not carry his burden because he, as the responsible operator towing the overwide load, did not hold a valid special permit.[2]
*1306 As indicated in our initial opinion, the trial court denied the plaintiff's requested instruction on the provisions of section 316.515(1), which limited the width of loads on public highways, based on its ruling that the special permit issued to NTC pursuant to section 316.550 was legally transferable to Mr. Batchelor and thus provided him an exception from the load width limitations. For the reasons expressed in our original opinion, we adhere to our decision that the special permit could not be validly transferred to Mr. Batchelor. Thus, it was error for the court to deny the instruction on this ground. In making its ruling, the trial court did not reach any issue of causation between the operation of an overwide load without a valid permit and the accident involving Mr. Ratley. Thus, it is not appropriate for this court to address the sufficiency of the evidence to prove causation with finality on this appeal, as that issue should first be considered by the trial court.
Batchelor's motion for rehearing also questions the propriety of our remanding for a new trial on damages as well as liability without reaching appellant's point on appeal that the damage award was insufficient, citing to directions in the Smith decision that retrial was limited to liability only as no error in the damages award was shown. We agree that some explanation for our remanding for retrial on all issues in this case is warranted.
The jury's verdict in this case appears to have been the result of a mistake caused by confusion in applying the comparative negligence instruction. The record reflects that the jury found Mr. Ratley to have been 50% comparatively negligent. Yet, the jury awarded Mrs. Ratley exactly half of the amount of damages suggested by defense counsel in closing argument. This anomaly strongly suggests that the jury unintentionally effected a double reduction of damages for the percentage of comparative negligence assessed against Mr. Ratley. Since this case must be retried on the issues of negligence and comparative negligence, in the interest of justice we remand for retrial on damages as well as liability.
We therefore adhere to our original decision reversing the judgment and remanding for a new trial on all issues.
WOLF, J., concurs.
BOOTH, J., dissents.
NOTES
[1] While there were special conditions placed on the method of transporting the load, the request for jury instruction was not based on alleged violation of permit conditions.
[1] Appellee's answer brief argued only that the trial court correctly denied the requested instruction on section 316.515

for two reasons:
1. There was no evidence presented that Mr. Batchelor was in violation of the wide load permit statute in order to justify the `violation of statute' jury instruction.
2. The statute does not require that the permit be issued in the name of the driver of the tractor towing the wide load trailer.
(Answer Brief, pp. 11-12). Appellee did not raise the issues of lack of causation or a perceived conflict between Smith v. Lumbermen's Mutual Casualty Co. and Brackin v. Boles on the main appeal even though appellant Ratley had cited Brackin for legal propositions in support of the second point addressing the improper comments of Mr. Batchelor's accident reconstruction expert.
[2] The complaint in this case did not plead any statutory violation; that omission, however, was not raised by the defendant as a ground for denying the requested charges thereon. The problems presented on this appeal could well have been obviated, however, had both parties followed good pleading practice when relying on separate statutory provisions. Good pleading practice requires that the complaint allege statutory violations in separate paragraphs if such violations are to be relied on as the basis of the action or as evidence of negligence.

Florida Rule of Civil Procedure 1.110(f) requires that the contents of each paragraph "shall be limited as far as practicable to a statement of a single set of circumstances." The federal counterpart to this rule, Fed.R.Civ.P. 10(b), has been construed to require allegations of common law negligence and statutory violations in separate statements. O'Donnell v. Elgin, J. & E. Ry. Co., 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187 (1949). In 2 Moore's Federal Practice, Para. 10.03, the author states:
Likewise, a complaint may be held to assert a single claim although liability is asserted under various sections of the securities laws. Similar results should follow in other situations where only one claim or cause of action is actually asserted, but more than one ground in support thereof is alleged. In this type of situation, even though separate statement by way of counts is not required, separate paragraphing in setting out the grounds in the above actions is desireable and required.
Pleading statutory violations in this manner alerts the court and opposing party to plaintiff's intended reliance on the statutory violation. Of equal importance, such pleading immediately requires the opposing party to plead any statutory provision or other defensive matter constituting an avoidance of the statutory violation. Fla.R.Civ.P. 1.110(d). As stated in Professor Moore's treatise:
The same general principles apply in stating defenses. Ordinarily each defense (other than denials) should be stated separately, but separation is not demanded unless it would facilitate the clear presentation of the matters set forth. Denials need not be separately stated.
2 Moore's Federal Practice, Para. 10.03, at p. 10-19.
Had the above practice been followed in the instant case, plaintiff would have pleaded each of the statutory provisions relied on, including section 316.515, as a basis for the charge of negligence. Defendant would then have been required to allege that he held a valid special permit and operated his load in accordance with section 316.550 as an avoidance of his obvious violation of the load width restriction in section 316.515.